IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUDITH THOMPSON,
   *Plaintiff,*

v.

TIMOTHY H. DORSEY, ET AL.
   *Defendants.*

Civil Action No.: ELH-10-1364

**MEMORANDUM OPINION**

This suit arises from a traffic stop in March 2009, during which defendant Timothy Dorsey, the Maryland State Trooper who initiated the stop, is alleged to have inappropriately touched plaintiff, the operator and sole occupant of the motor vehicle, during a search of her person incident to the stop. *See* First Amended Complaint ("Am. Compl.," ECF 20) ¶¶ 4-5. Plaintiff alleges that Dorsey violated her rights under the federal and Maryland constitutions and committed a common law battery. Plaintiff amended her suit to add a claim against Colonel Terrence Sheridan, defendant, who was the Superintendent of the Maryland State Police "during defendant Dorsey's training and tenure as a Maryland State Trooper."[1] *Id.* ¶ 15. The claim (Count 4) alleges supervisory liability under 42 U.S.C. § 1983.

Presently pending before the Court is Sheridan's Motion to Dismiss ("Motion," ECF 27), which plaintiff opposes. *See* Plaintiff's Opposition to Motion to Dismiss ("Opp'n," ECF 28).[2] The issues have been fully briefed and the Court now rules pursuant to Local Rule 105.6, no hearing being necessary.

---

[1] Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331.

[2] Dorsey filed an Answer (ECF 13) to the Complaint in February 2011.

# I. Factual and Procedural Background[3]

On the night of March 19, 2009, "approximately 6 minutes after midnight," plaintiff was driving her car on Snydersburg Road in Hampstead, Carroll County, Maryland. Am. Compl. ¶ 4. "Dorsey activated his cruiser's emergency flashing lights to pull [plaintiff's] vehicle over." *Id.* Because the road was two-lanes and a farm fence ran close to the edge, plaintiff "continued to drive a short distance to her home and then pulled into the entrance of her driveway and stopped the car." *Id.*

Dorsey asked Thompson to "produce her driver's license and vehicle registration," which she did. He also asked plaintiff if she had been drinking alcohol, and she responded in the affirmative. *Id.* ¶ 5. Thereafter, Dorsey "conducted some field sobriety tests, which he told plaintiff that she did not pass." *Id.* Then, "[h]e announced that he was going to search plaintiff for weapons." Plaintiff "said that she did not have any." Nevertheless, Dorsey "instructed her to turn around," then "reached around" and "put his hands on her breasts." *Id.* According to plaintiff, Dorsey "stuck his hand down [plaintiff's] shirt and into her bra and placed his bare hand on her breast." *Id.* He then "touched the other breast." *Id.* Subsequently, he "rubbed his hand against the inner part of each leg from the genital area down." *Id.* ¶ 6. Claiming that she did not consent to Dorsey's "unlawful touching and intrusive search," plaintiff avers that she "was scared and confused and lacked an understanding of what authority the officer had to touch her in this manner." *Id.* ¶ 7.

---

[3] Given the posture of the case, the Court must "accept the well-pled allegations of the complaint as true," and "construe facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir.), *cert. denied*, 540 U.S. 940 (2003).

Dorsey informed plaintiff that he "was not going to charge her with an offense." *Id.* ¶ 8. Plaintiff's husband, from whom she was separated, happened to drive by, and asked "whether everything was all right." *Id.* As plaintiff entered her home, Dorsey told her husband that plaintiff had been "'lucky' that night." *Id.* Plaintiff's husband then entered the house and found plaintiff "curled up on the couch and . . . crying." *Id.*

This suit followed on May 27, 2010. Plaintiff initially sued only Dorsey (ECF 1). As noted, she alleged violations of her federal and state constitutional rights, as well as common law battery. On March 18, 2011, plaintiff filed her First Amended Complaint (ECF 20), adding Count 4, a § 1983 claim against Colonel Terrence Sheridan, based on a theory of supervisory liability.

Plaintiff alleges that, as Superintendent of the Maryland State Police, Sheridan "knew or should have known that there were problems with recruitment, supervision and training officers under his command," on the basis of "a history of officers committing acts of sexual misconduct and harassment." Am. Compl. ¶¶ 18-19. According to plaintiff, Sheridan "failed to adopt and establish . . . necessary training programs or improve supervision to address the problem," and he "failed to adopt policies and practices to weed-out and remove from selection and retention those individuals who were likely to commit acts of sexual misconduct and harassment." *Id.* ¶¶ 19-20. Further, plaintiff asserts: "The failure to adopt such policies and practices exhibited reckless or callous indifference to constitutional rights and was a cause of Dorsey's unconstitutional acts." *Id.* ¶ 20. Plaintiff maintains that Dorsey's actions "were a violation of the plaintiff's clearly established right under the Fourth Amendment to the United States Constitutions [sic] against unreasonable searches and seizures." *Id.* ¶ 9.

## II. Discussion

### A.

Pursuant to FED. R. CIV. P. 12(b)(6), Sheridan has moved to dismiss Thompson's suit, arguing that the First Amended Complaint fails to state a claim for relief against him. In particular, Sheridan contends that plaintiff has failed to state a claim for supervisory liability. Sheridan also contends that, because the facts as alleged by plaintiff do not amount to a constitutional violation by Sheridan, he is entitled to dismissal based on qualified immunity. Memorandum in Support of Defendant Sheridan's Motion to Dismiss ("Motion Memo.," ECF 27-1) 11.

Under FED. R. CIV. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted).

To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the Rule demands more than bald accusation or mere speculation. *Id.* Thus, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.*

A defendant may test the adequacy of a complaint by way of a motion under Rule 12(b)(6). *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), make clear, however, that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S.

Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions. . . .'" (citation omitted)); *see also Simmons v. United Mortgage and Loan Inv.*, No. 09-2147, 2011 WL 184356, at *10 (4th Cir. Jan. 21, 2011); *Andre v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

A motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010). To satisfy the minimal requirements of Rule 8(a)(2), however, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556. Thus, where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

B.

Thompson's claim against Sheridan arises under 42 U.S.C. § 1983. Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In analyzing a § 1983 claim, a court must first identify "the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271.

A § 1983 claim requires "that the alleged deprivation was committed by a person acting under color of state law," *West v. Atkins*, 487 U.S. 42, 48 (1988), that is, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, *supra*, 129 S. Ct. at 1948. A plaintiff cannot maintain a § 1983 cause of action under a *respondeat superior* theory. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978); *Iqbal*, 129 S. Ct. at 1948. However, in certain circumstances, "supervisory officials may be held liable . . . for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).

"[T]he theory of supervisory liability arises from the obligation of a supervisory law officer to insure that his subordinates act within the law." *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 203 (4th Cir. 2002). Liability is premised upon "'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Shaw*, 13 F.3d at 798 (citation omitted). The Fourth Circuit has said, *Randall,* 302 F.3d at 203 (citing *Shaw*, 13 F.3d 791 at 798):

> Although such a supervisor may not prevent all illegal acts by his subordinates, he is obligated, when on notice of a subordinate's tendency to act outside the law, to take steps to prevent such activity. If a supervisory law officer is deliberately

> indifferent to that responsibility, he then bears some culpability for illegal conduct by his subordinates . . . .
>
> A § 1983 claim based upon supervisory liability has three necessary elements:
>
>> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw,* 13 F.3d at 799 (citations omitted).

Plaintiff did not make clear in her suit whether she sued Sheridan in his official or personal capacity, or both. However, "a plaintiff need not plead expressly the capacity in which [she] is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). In cases where the plaintiff does not specifically allege capacity, "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. One factor indicative of a personal-capacity suit "might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint." *Id.* Another factor is the "plaintiff's request for compensatory damages, since such relief is unavailable in official capacity suits." *Id.*

It appears that plaintiff has sued Sheridan in his personal capacity. She does not allege that Sheridan acted in accordance with a governmental policy or custom. Moreover, she has

requested "compensatory and punitive damages." Am. Compl. ¶ 20.[4]  When, as here, a defendant raises the defense of qualified immunity, it is clear that "the defendant interpreted the plaintiff's action as being against him personally," as "qualified immunity is available only in a personal capacity suit." *Biggs,* 66 F.3d at 60.

C.

Sheridan contends that plaintiff's allegations "only vaguely refer to policies of the Maryland State Police without identifying a single policy with which the Plaintiff takes issue and only vaguely refer[] in general terms to misconduct by unnamed, unidentified officers on unidentified, unspecified occasions." Motion Memo. 10. According to Sheridan, such threadbare allegations, consisting "of a single instance of misconduct" by Dorsey, "do nothing to establish" a plausible claim of supervisory liability. *Id.*; *see also* Defendant Sheridan's Reply in Support of his Motion to Dismiss ("Reply," ECF 29) 2.

In her two and a half page Opposition, plaintiff contends that she has sufficiently stated a plausible claim for relief. *See* Opp'n 3. She points to her allegations of "a history of officers committing acts of sexual misconduct," and claims, *inter alia*, that "Sheridan was on notice" of the need for "policy development, specialized training, and the use of modern instruction programs to deter and prevent the recurrence of sexual misconduct . . . by officers." *See* Am.

---

[4] Sheridan claims that a suit against him in his official capacity would not be permitted, because such a claim would be tantamount to a suit against the Maryland State Police. Motion Memo. 11. State agencies and government entities that "are considered 'arms of the State' for Eleventh Amendment purposes," are not "persons" subject to suit in federal court under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 70 (1989); *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("[A] State and its 'arms' are, in effect, immune from suit in federal court . . . ."); *see, e.g.*, *Milligan v. Brady*, No. RWT-10-2107, 2011 WL 1833346, at *8 (D. Md. May 13, 2011) (dismissing the Maryland State Police as it is not a "person" subject to suit under § 1983); *Cleary v. Green*, No. CCB-07-1202, 2007 WL 4707635, at *2 n.1 (D. Md. Nov. 15, 2007) (parties concede that the Maryland State Police is a state agency and an arm of the State).

Compl. ¶ 19. Plaintiff also complains that Sheridan failed to adopt policies and practices "to select, hire, train and supervise officers" to prevent their sexual misconduct. *Id.* ¶ 17. In her view, Sheridan "acted unlawfully" by "fail[ing] to take appropriate action to prevent" the misconduct. Opp'n 3.[5]

A review of plaintiff's § 1983 claim against Sheridan (Count 4) reveals that she has summarily recited all three elements for a supervisory claim. Beyond that, her claim is couched in conclusory language, devoid of any factual detail. For example, she avers that "there was a history of officers committing acts of sexual misconduct," Am. Compl. ¶ 19, and claims that "Sheridan was on notice" of "problems with recruitment, supervision and training of officers under his command." *Id.* ¶ 18. But, aside from these general averments, plaintiff has not identified any facts to support the broad allegations.

The one specific allegation concerns Dorsey's alleged misconduct. A supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slaken v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984), *cert. denied,* 470 U.S. 1035 (1985). Rather, the supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" to establish deliberate indifference or acquiescence "in the constitutionally offensive conduct of his subordinates." *Id.*[6]

---

[5] In her Opposition, plaintiff failed to address the elements or parameters of a supervisory claim under § 1983.

[6] The plaintiff "assumes a heavy burden of proof in supervisory liability cases. . . . [H]e must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slaken,* 737 F.2d at 373 (citation omitted). "Ordinarily," a plaintiff "cannot satisfy his burden by pointing to a single incident or isolated incidents for a supervisor cannot be expected to promulgate rules and procedures covering every

Here, there is nothing but generalities and boilerplate in the claim against Sheridan. As the Court made clear in *Iqbal*, conclusory allegations are "not entitled to be assumed true." 129 S. Ct. at 1951. Because the First Amended Complaint fails to state a plausible claim on which relief may be granted as to Sheridan, I will dismiss Count 4, without prejudice, and with leave to amend.

Given that the factual allegations undergirding plaintiff's claim against Sheridan are legally insufficient, it is premature to address the merits of defendant's assertion of qualified immunity (*see* Motion Memo. 11).[7] *See Clem v. Corbeau*, 284 F.3d 543, 553 n.5 (4th Cir. 2002)

---

(...footnote continued)

conceivable occurrence within the area of his responsibilities." *Id.* (citing *Orpiano v. Johnson,* 632 F.2d 1096, 1101 (4th Cir. 1980), *cert. denied,* 450 U.S. 929 (1981)).

[7] "'Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (citation omitted). "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009).

Notably, "qualified immunity is 'an immunity from suit rather than a mere defense to liability,'" and "'it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Supreme Court has "'stressed the importance of resolving immunity questions at the earliest possible stage in litigation,'" and has said that "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery.'" *Pearson,* 129 S. Ct. at 815 (alteration in original).

There is a two-pronged procedure to analyze qualified immunity claims. *Id.* at 818. In the first prong, a court must "decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 816 (citations omitted). In the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The court has discretion to consider the prongs in any order. *Id.* at 821. Qualified immunity will apply "unless the official's conduct violated a clearly established constitutional right," *id.*, so both prongs must be answered in the affirmative for qualified immunity not to apply. *Id.* at 16.

("[A]n officer's entitlement to qualified immunity depends not on his subjective beliefs but rather on 'the *objective* (albeit fact-specific) question whether a reasonable officer could have believed [the relevant conduct] to be lawful.'" (citation omitted) (alterations in original)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("The relevant question . . . is the objective (albeit *fact-specific*) question whether a reasonable officer could have believed [the] search to be lawful in light of clearly established law and the information the searching officers possessed. . . . [S]ubjective beliefs about the search are irrelevant." (Emphasis added)).

## Conclusion

For the foregoing reasons, the Court will grant Sheridan's Motion to Dismiss, without prejudice, and with leave to amend. A separate Order consistent with this Opinion will follow.


Date: June 30, 2011                      /s/
                                         Ellen Lipton Hollander
                                         United States District Judge